## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TYREKE SMITH<br>303 W. Somerville, Avenue<br>Philadelphia, PA 19120<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>THE TRUSTEES OF THE UNIVERSITY<br>OF PENNSYLVANIA d/b/a HOSPITAL<br>OF THE UNIVERSITY OF<br>PENNSYLVANIA<br>3600 Chestnut Street, Suite 228<br>Philadelphia, PA 19104<br><br>　　　　　Defendant. | CIVIL ACTION<br><br>No. _____<br><br>**JURY TRIAL DEMANDED** |

### CIVIL ACTION COMPLAINT

Plaintiff, Tyreke Smith, (hereinafter referred to as "Plaintiff"), by and through his undersigned counsel, hereby avers as follows:

### INTRODUCTION

1. This action has been initiated by Plaintiff against the Trustees of the University of Pennsylvania d/b/a Hospital of the University of Pennsylvania ("HUP") (*hereinafter* referred to as "Defendant") for violations of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101, *et. seq.*), the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §§ 2601, *et. seq.*), the Philadelphia Fair Practices Ordinance ("PFPO"), and the Pennsylvania Human Relations Act ("PHRA").[1]

---

[1] Plaintiff intends to amend his instant lawsuit to include claims under the PHRA and PFPO on or about August 9, 2025, once his administrative remedies are fully exhausted with the appropriate administrative agency. Plaintiff dual-filed his Charge of Discrimination on August 9, 2024. Any claims under the PHRA and PFPO would mirror the instant ADA claims identically.

2.	Plaintiff asserts, *inter alia*, that he experienced unlawful workplace discrimination and retaliation, culminating in his unlawful termination from Defendant. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

3.	This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this State and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4.	The United States District Court for the Eastern District of Pennsylvania has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state and local law claim(s) because such claim(s) arise out of the same common nucleus of operative facts as his federal claims asserted herein.

5.	Venue is properly laid in this District pursuant to 28 U.S.C. sections 1391(b)(1) and (b)(2), because Defendant resides in and/or conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

6.	On or about August 9, 2024, Plaintiff filed a Charge of Discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted his administrative remedies before initiating this action by timely filing and dual-filing his Charge with the EEOC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

**PARTIES**

7. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

8. Plaintiff is an adult individual with an address as set forth above.

9. Defendant owns and operates various health care facilities, including HUP, and is the largest employer in Philadelphia.

10. At all times relevant herein, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the benefit of Defendant.

**FACTUAL BACKGROUND**

11. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12. On or about September 12, 2022, Defendant hired Plaintiff and employed him in its environmental services department for approximately twenty (20) months until unlawfully terminating him on or about May 23, 2024, as discussed in detail herein.

13. Throughout his employment, Plaintiff was primarily supervised by Defendant's Manager, Ronald Willford ("Willford").

14. Plaintiff's mother suffers from numerous disabilities and serious medical conditions.

15. As a result, Plaintiff serves as her primary caretaker and assists her with daily life activities, including but not limited to, assistance with health treatments and appointments (among other caretaking responsibilities).

16. Because Plaintiff was his mother's primary caretaker, he incurred occasional absences when his mother needed treatment or other appointments/assistance for associated conditions/complications.

17. Initially, Willford disciplined Plaintiff for these absences, issuing him discipline on April 14, 2023, August 16, 2023, and again on October 4, 2023.

18. Plaintiff had explained to Willford that his absences were due to his primary caregiver status, but at no time did Willford offer, explain, or otherwise mention FMLA (or any other leave of absence) as an option for Plaintiff following his one-year work anniversary with Defendant.

19. After learning about FMLA through a co-worker, on or about November 22, 2023, Plaintiff applied for intermittent FMLA through Defendant's Third-Party Administrator ("TPA") and was ultimately approved to take 2-3 days per week to help care for his mother from November 27, 2023 through May 26, 2024.

20. Plaintiff apprised Willford of his application for, and approval of, intermittent FMLA, and Willford immediately and aggressively confronted Plaintiff demanding to know why he "needed" FMLA.

21. Plaintiff responded and told Willford, again, that he was his mother's caregiver, but instead of being understanding, Willford reacted by treating Plaintiff in a retaliatory and discriminatory manner, subjecting him to a hostile working environment.

22. By way of example only, Willford would make remarks to Plaintiff such as:

    a. "You're always out (on FMLA);"

    b. "You are abusing your FMLA;" and

    c. "You are not at work enough."

23. Willford would make these statements both directly to Plaintiff, as well as to Plaintiff's colleagues, despite his explicit notice that Plaintiff's absences were approved by Defendant's TPA as FMLA-qualifying.

24. Additionally, Willford often threatened Plaintiff with unwarranted discipline, including threatening to write him up for being out of work or leaving early (when utilizing FMLA leave to care for his mother).

25. Willford began to also routinely nit-pick, badger, and belittle Plaintiff about his work.

26. Plaintiff did not observe Willford treat other employees who were not utilizing FMLA leave in a similar manner (as discussed above).

27. In the weeks leading up to Plaintiff's termination, Willford became increasingly agitated and annoyed any time Plaintiff used FMLA leave to care for his mother.

28. Plaintiff complained about Willford's discriminatory treatment to other managers Ricard Garner ("Garner") and James (Last Name Unknown), but he was told to simply stay out of Willford's way.

29. Thereafter, on or about May 23, 2024, Willford suddenly terminated Plaintiff for pretextual and false reasons, claiming that he had caught Plaintiff sleeping on the job.

30. To be clear, Plaintiff was not sleeping on the job, and Defendant could not elaborate or provide any evidence to substantiate Willford's unfounded allegation.

31. Willford stated that Garner had witnessed Plaintiff sleeping, but when Plaintiff questioned this, Garner confirmed to Plaintiff that he had not seen him sleeping as he [Garner] was behind Willford when he came into the room.

32. Further, unlike other similarly situated employees, Plaintiff was terminated for an alleged first offense (which again did not happen), having never been disciplined or warned before about sleeping on the job. Willford would frequently just verbally admonish employees who were actually sleeping on the job; however, these employees were not utilizing FMLA for a parent, like Plaintiff.

33. At no time did Willford or anyone else at Defendant tell Plaintiff that he was not eligible for re-hire.

-**FACTS SUPPORTING POST EMPLOYMENT RETALIATION**-

34. After his termination from Defendant, on or about August 9, 2024, Plaintiff filed a Charge of Discrimination with the EEOC.

35. Within his EEOC charge Plaintiff outlined that he believe he was targeted, subjected to a hostile work environment, and ultimately terminated because he was negatively associated with his mother's disabilities and/or because of his request/utilization of FMLA leave.

36. Plaintiff subsequently became employed by Crothall Healthcare ("Crothall") (a temporary agency focused on placement and staffing within healthcare facilities such as Defendant).

37. Plaintiff was assured of the prospect of potential permanent employment through direct hire if he performed well.

38. Crothall placed Plaintiff to work at HUP during which time Plaintiff was jointly-employed by Crothall and Defendant with the potential of direct hire in the future.

39. However, shortly after beginning orientation on or about October 21, 2024, Crothall's Regional Training Manager, Arisa Humphrey ("Humphrey"), informed Plaintiff that Defendant's Human Resources stated: (a) Plaintiff was "not allowed in the building;" (2) "Penn

6

does not want [Plaintiff] here;" and (3) his employment was being terminated because he could not work for Defendant any longer.

40. Plaintiff believes and therefore avers that Defendant ended his assignment in October of 2024 in violation of the ADA and FMLA.

## COUNT I
### Violations of Family and Medical Leave Act ("FMLA")
(Wrongful Termination - Interference & Retaliation)

41. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

42. Plaintiff was a full-time employee who worked for Defendant for more than 1 year within a location that employed at least 50 employees within 75 miles.

43. Plaintiff exercised his FMLA rights and had additional FMLA leave eligibility remaining at the time of his termination.

44. After being approved for intermittent FMLA, Defendant's management continuously questioned Plaintiff's use and continued attempted use of his FMLA entitlement.

45. Defendant terminated Plaintiff in extremely suggestive and close proximity to his most recent usage of FMLA leave.

46. The motivating and/or determinative factor in deciding to terminate Plaintiff's employment was (a) his use of FMLA; (b) to prevent him from utilizing future FMLA leave; and/or (c) to dissuade him or others from utilizing FMLA.

47. Defendant committed interference and retaliation violations of the FMLA by *inter alia*: (1) terminating Plaintiff in May of 2024 and October of 2024 for requesting and/or exercising his FMLA rights; (2) terminating Plaintiff in May of 2024 and October of 2024 and/or subjecting him to a hostile work environment to dissuade Plaintiff from utilizing FMLA leave;

7

(3) considering Plaintiff's FMLA leave needs in making the decision to terminate him in May of 2024 and October of 2024; (4) terminating to prevent him from taking FMLA-qualifying leave in the future; (5) terminating Plaintiff in May of 2024 because he complained about the harassment he was being subjected to in violation of the FMLA; (6) terminating Plaintiff in October of 2024 because he complained about the harassment he was being subjected to in violation of the FMLA and/or filed an EEOC charge outlining Defendant's FMLA violation; and/or (7) taking actions towards him that would dissuade a reasonable person from exercising his rights under the FMLA.

### COUNT II
### Violations of the Americans with Disabilities Act, as Amended ("ADA")
### ([1] Associational Disability Discrimination; and [2] Hostile Work Environment; and [3] Retaliation)

48. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

49. Plaintiff avers that Defendant terminated his employment in May of 2024 because it (a) perceived Plaintiff as being distracted when dealing with his mother's health conditions outside of work; (b) perceived Plaintiff as having to miss too much time from work to care for his mother; (c) had other negative perceptions of Plaintiff in association with his mother's health conditions; (d) he complained about Defendant's constant harassment and negative perceptions of Plaintiff related to his mother's health conditions and need to care for his mother and was terminated shortly following his most recent complaints.

50. Plaintiff initiated EEOC proceedings (a protected activity) on or about August 9, 2024.

51. Shortly thereafter, Defendant informed Crothall that Plaintiff was (a) "not allowed in the building;" (2) "Penn does not want [Plaintiff] here;" and (3) required his employment to be terminated because he could not work for Defendant any longer.

52. Plaintiff avers that Defendant terminated his employment in October of 2024 because it (a) perceived that Plaintiff would be distracted when dealing with his mother's health conditions outside of work; (b) perceived Plaintiff as having to miss too much time from work to care for his mother; (c) had other negative perceptions of Plaintiff in association with his mother's health conditions; and/or (d) because he complained about Defendant's constant harassment and negative perceptions of Plaintiff related to his mother's health conditions and need to care for his mother and was terminated shortly following his most recent complaints and/or filed an EEOC charge.

53. These actions as aforesaid constitute violations of the Americans with Disabilities Act, as amended.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

B. Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

C. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

D. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

E. Plaintiff is to be given a trial by jury.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
(215) 639-0801

Dated: May 21, 2025

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Tyreke Smith | : | CIVIL ACTION |
| v. | : | |
| The Trustees of the University of Pennsylvania d/b/a Hospital of the University of Pennsylvania | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.   ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)   ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (x)

| 5/21/2025 | *[signature]* | | Plaintiff |
|---|---|---|---|
| **Date** | **Attorney-at-law** | | **Attorney for** |
| 215-639-0801 | 215-639-4970 | | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: Defendants place of business

**RELATED CASE IF ANY:** Case Number: _____ Judge: _____

1. Does this case involve property included in an earlier numbered suit?    Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?    Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?    Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?    Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.    Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Wage and Hour Class Action/Collective Action
6. ☐ Patent
7. ☐ Copyright/Trademark
8. ☐ Employment
9. ☐ Labor-Management Relations
10. ☒ Civil Rights
11. ☐ Habeas Corpus
12. ☐ Securities Cases
13. ☐ Social Security Review Cases
14. ☐ Qui Tam Cases
15. ☐ Cases Seeking Systemic Relief *see certification below*
16. ☐ All Other Federal Question Cases. *(Please specify)*: _____

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify)*: _____
7. ☐ Products Liability
8. ☐ All Other Diversity Cases: *(Please specify)* _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
SMITH, TYREKE

**DEFENDANTS**
THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA D/B/A HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA

**(b)** County of Residence of First Listed Plaintiff: Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- 110 Insurance
- 120 Marine
- 130 Miller Act
- 140 Negotiable Instrument
- 150 Recovery of Overpayment & Enforcement of Judgment
- 151 Medicare Act
- 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- 153 Recovery of Overpayment of Veteran's Benefits
- 160 Stockholders' Suits
- 190 Other Contract
- 195 Contract Product Liability
- 196 Franchise

**REAL PROPERTY**
- 210 Land Condemnation
- 220 Foreclosure
- 230 Rent Lease & Ejectment
- 240 Torts to Land
- 245 Tort Product Liability
- 290 All Other Real Property

**TORTS**
PERSONAL INJURY
- 310 Airplane
- 315 Airplane Product Liability
- 320 Assault, Libel & Slander
- 330 Federal Employers' Liability
- 340 Marine
- 345 Marine Product Liability
- 350 Motor Vehicle
- 355 Motor Vehicle Product Liability
- 360 Other Personal Injury
- 362 Personal Injury - Medical Malpractice

**CIVIL RIGHTS**
- 440 Other Civil Rights
- 441 Voting
- 442 Employment
- 443 Housing/ Accommodations
- [X] 445 Amer. w/Disabilities - Employment
- 446 Amer. w/Disabilities - Other
- 448 Education

PERSONAL INJURY
- 365 Personal Injury - Product Liability
- 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- 370 Other Fraud
- 371 Truth in Lending
- 380 Other Personal Property Damage
- 385 Property Damage Product Liability

**PRISONER PETITIONS**
Habeas Corpus:
- 463 Alien Detainee
- 510 Motions to Vacate Sentence
- 530 General
- 535 Death Penalty
Other:
- 540 Mandamus & Other
- 550 Civil Rights
- 555 Prison Condition
- 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- 625 Drug Related Seizure of Property 21 USC 881
- 690 Other

**LABOR**
- 710 Fair Labor Standards Act
- 720 Labor/Management Relations
- 740 Railway Labor Act
- 751 Family and Medical Leave Act
- 790 Other Labor Litigation
- 791 Employee Retirement Income Security Act

**IMMIGRATION**
- 462 Naturalization Application
- 465 Other Immigration Actions

**BANKRUPTCY**
- 422 Appeal 28 USC 158
- 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- 820 Copyrights
- 830 Patent
- 835 Patent - Abbreviated New Drug Application
- 840 Trademark
- 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- 861 HIA (1395ff)
- 862 Black Lung (923)
- 863 DIWC/DIWW (405(g))
- 864 SSID Title XVI
- 865 RSI (405(g))

**FEDERAL TAX SUITS**
- 870 Taxes (U.S. Plaintiff or Defendant)
- 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- 375 False Claims Act
- 376 Qui Tam (31 USC 3729(a))
- 400 State Reapportionment
- 410 Antitrust
- 430 Banks and Banking
- 450 Commerce
- 460 Deportation
- 470 Racketeer Influenced and Corrupt Organizations
- 480 Consumer Credit (15 USC 1681 or 1692)
- 485 Telephone Consumer Protection Act
- 490 Cable/Sat TV
- 850 Securities/Commodities/ Exchange
- 890 Other Statutory Actions
- 891 Agricultural Acts
- 893 Environmental Matters
- 895 Freedom of Information Act
- 896 Arbitration
- 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); FMLA (29USC2601)
Brief description of cause:
Violations of the ADA, FMLA, PFPO and the PHRA.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: 5/21/2025    SIGNATURE OF ATTORNEY OF RECORD: [signature]

**FOR OFFICE USE ONLY**
RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE